**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KARIM KOUBRITI,

                Plaintiff,

v.

RICHARD CONVERTINO and MICHAEL
THOMAS, Jointly and Severally and in their
Individual Capacities,

                Defendants.

_____/

CASE NO. 07-13678

HON. MARIANNE O. BATTANI

## ORDER DENYING DEFENDANT'S MOTION TO
## DISMISS FOR FAILURE TO STATE A CLAIM

Before the Court is Defendant Richard Convertino's Motion to Dismiss Pursuant to

F. R. CIV. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted (Doc.

No. 47). The Court heard oral argument and, at the conclusion of the hearing, took this

matter under advisement. For the reasons that follow, the Court **DENIES** the motion.

## I. PROCEDURAL BACKDROP

Plaintiff, Karim Koubriti filed his First Amended Complaint against Defendants

Richard Convertino and Michael Thomas, a Special Agent with the Federal Bureau of

Investigation, asserting Defendants violated the Fifth Amendment. Plaintiff's claims arise

out of Defendants' alleged misconduct in the criminal prosecution of Plaintiff for Conspiracy

to Provide Material Support or Resources to Terrorists in violation of 18 U.S.C. §§ 371 and

2339(A). Koubriti was convicted not only of that charge but of Conspiracy to Engage in

Fraud and Misuse of Visas, Permits and Other Documents in violation of 18 U.S.C. §§ 371,

1546(a).  See United States of America v. Koubrit et al., Case No. 01-80778, Doc. No. 367.


After the government concurred in his motion for a new trial, it moved to dismiss Count I of the Indictment--providing material support to terrorists--without prejudice. Defendant Convertino was the Assistant United States Attorney who prosecuted Plaintiff.

## II.  FACTUAL BACKGROUND

According to the First Amended Complaint ("FAC"), on September 17, 2001, a group task force of agents from the Detroit Joint Terrorism Task Force (JTTF) searched an apartment and found evidence including a day planner containing sketches, a videotape, and numerous arabic language audio tapes.  FAC ¶ 10.  On September 27, 2001, the grand jury issued an indictment charging Plaintiff with document fraud.  Thereafter, Convertino and Thomas began investigating Plaintiff's involvement in  terrorist activities. Id.  ¶¶ 13, 14.  Plaintiff alleges that Convertino presented false evidence and perjured testimony to the grand jury and failed to disclose numerous facts that undermine the evidence presented at trial.  Id. ¶ 15.  On August 28, 2002, the grand jury issued a Second Superseding Indictment charging Plaintiff with terrorist-related activities.   Id. ¶ 16.

Plaintiff proceeded to trial on the charges on March 26, 2003.  At trial, the government alleged that the planner sketches of Queen Alia Jordan and the Incirlik Air Base and the videotape of tourists at the MGM Grand Casino in La Vegas, Disneyland, and some sites in New York were casing materials.  Id. ¶ 18.  Yousif Hnimssa, the witness who provided evidence against Koubriti, testified regarding Plaintiff's activities and corroborated the government's claims.  Id. ¶ 19.  Plaintiff was convicted and subsequently filed a series of motions seeking a judgment notwithstanding the verdict or a new trial, claiming that the

prosecution team engaged in misconduct.

At a hearing on the motion, the presiding judge found that certain undisclosed documents should have been turned over to the defense.  Id. ¶ 23.  The government reviewed every document and concurred in Defendant's motion.  Id. ¶ 24.

In Plaintiff's First Amended Complaint, he alleges that Defendants violated his Fifth Amendment rights by maliciously and intentionally withholding exculpatory evidence and fabricating evidence.  The specific allegations against Convertino are that while he was "acting in an investigative type role he withheld exculpatory evidence or fabricated evidence in Plaintiff's criminal case by:

> A.  Failing to turn over photographs of the Queen Alia Hospital or ordering that they not be turned over to [Koubriti] or presented to the Grand Jury;
>
> B.  Failing to disclose that none of the Defendants could establish which site or sites the sketches established (if either) after their respective trips to Jordan;
>
> C.  Ordering or directing Defendant Thomas not to memorialize any of the ten to twenty interviews of Yousif Hnimssa[1] prior to the Second Superseding Indictment being issued; and
>
> D.  Failing to disclose the Opinion of Air Force ASI SAS Goodnight to the Grand Jury or Plaintiff concerning the alleged Incirlik Air Base sketches.

FAC at ¶ 27.

## III.  STANDARD OF REVIEW

---

[1] A 302 is an FBI form used for reporting an interview with a potential witness or suspect or to record other actions taken by or observations of an agent.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). "Under general pleading standards, the facts alleged in the complaint need not be detailed, although 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombley, 127 S. Ct. at 1964-65.

## IV.   ANALYSIS

### A. Are the Claims Advanced Against Convertino Barred by Absolute Immunity?

Convertino argues that his decision not to disclose evidence is "so intimately tied to the judicial process that it entitled him to the aegis of absolute immunity." Def.'s Br. at 16. The Supreme Court held that prosecutorial officials are absolutely immune from "suits for malicious prosecution and for defamation, and that this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." Burns v. Reed, 500 U.S. 478, 484 (1991). There is no question that the use of perjured testimony at trial and the nondisclosure of exculpatory information are entitled to absolute immunity. Jones v.

4

Shankland, 800 F.2d 77, 80 (6th Cir. 1986); Imbler v. Pachtman, 424 U.S. 409, 413 (1976).

The Supreme Court protects the interest served by absolute immunity through a functional

test. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1995). Those functions more "intimately

associated with the judicial phase of the criminal process" are more likely to merit careful

consideration for absolute immunity. Id. In contrast, those functions more "investigative"

in nature--searching for "clues and corroboration"--are more removed from the judicial

process and merit only qualified immunity. Id. at 273. Accordingly, this Court must

determine whether the allegations in this case in some way meet an "investigative"

function.

At the outset of this determination, the Court observes that "[t]he line between a

prosecutor's advocacy and investigating roles might sometimes be difficult to draw."

Zahrey v. Coffey, 221 F.3d 342, 347 (2d Cir. 2000). The Court is not without guidance,

however, because the Supreme Court "has identified 'evaluating evidence and interviewing

witnesses' as falling on the absolute immunity side of the line, leaving 'searching for the

clues and corroboration' that might lead to a recommendation for an arrest on the qualified

immunity side." Buckley, 509 U.S. at 273. Moreover, an examination of the juncture in the

criminal process wherein the claims arise may be helpful inasmuch as Buckley suggests

that a prosecutor's conduct prior to the establishment of probable cause should be

considered investigative. The Court noted, "A prosecutor neither is, nor should consider

himself to be, an advocate before he has probable cause to have anyone arrested."

Buckley, 509 U.S. at 274. Accord Zahrey, 221 F.3d at 347 n. 2; see also Hill v. City of

New York, 45 F.3d 653, 661 (2d Cir. 1995) (observing that "[b]efore any formal legal

proceeding has begun and before there is probable cause to arrest, it follows that a

5

prosecutor receives only qualified immunity for his acts").

Nevertheless, the mere probable cause determination does not guarantee a prosecutor absolute immunity from liability for all subsequent conduct. Even after that determination, a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." Buckley, 509 U.S. at 274 n. 5; Zahrey, 221 F.3d at 347 n. 2 ("All members of the Court [in Buckley ] recognized ... that a prosecutor's conduct even after probable cause exists might be investigative."). For instance, in interpreting Buckley, the Second Circuit has distinguished between "preparing for the presentation of an existing case" and attempting to "furnish evidence on which a prosecution could be based," Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998). Only the former entitles a prosecutor to absolute immunity. Id.

Following the Supreme Court's direction, this Circuit instructs courts to the "nature of the function performed" in evaluating whether to extend absolute immunity. Gregory v. City of Louisville, 444 F.3d 725, 738 (6th Cir. 2006). In Spurlock v. Thompson, 330 F.3d 791 (6th Cir. 2003), the Sixth Circuit offered clarification as to when a prosecutor's conduct implicates his advocacy role and when it implicates administrative or investigative functions. Conduct occurring in the advocacy role includes: malicious prosecution, id. at 797 (citing Burns, 500 U.S. 478, 485 n. 4); "appearances at probable cause and grand jury hearings," (citing Burns, 500 U.S. 478, 487, n. 8); "professional evaluation of the evidence assembled by the police, and appropriate presentation of that evidence at trial or before the grand jury after a decision to seek an indictment has been made," (citing Buckley, 509 U.S. at 273); "preparation of witnesses for trial," (citing Higgason v. Stephens, 288 F.3d 868, 878 (6th Cir. 2002)); and "knowing presentation of false testimony at trial," (citing

6

Imbler, 424 U.S. 409, 413, 430; Buckley, 509 U.S. 259, 267 n. 3)).

Prosecutorial conduct that occurs as part of an administrative or investigative function includes: "giving legal advice to police," Spurlock, 330 F.3d at 798 (citing Burns, 500 U.S. 478, 496); "authorizing warrantless wiretaps in the interest of national security," (citing Mitchell v. Forsyth, 472 U.S. 511, 520 (1985)); making statements "in an affidavit supporting an application for an arrest warrant,"  (citing Fletcher v. Kalina, 522 U.S. 118, 139 (1997)); and making "out-of-court statements" at a press conference, (citing Buckley, 509 U.S. 259, 277-78).

Here, several of the specific allegations fall within the absolute immunity doctrine. For example, Plaintiff asserts in Paragraph 27A, that Convertino ordered that photographs of the Queen Alia Hospital "not be turned over to [Koubriti] or presented to the Grand Jury." This conduct falls within his role as advocate for the government.  Likewise, Paragraph 27 D, includes the allegation that Convertino "[f]ail[ed] to disclose the Opinion of Air Force ASI SAS Goodnight to the Grand Jury or [Koubriti] concerning the alleged Incirlik Air Base sketches."  See FAC.  Nevertheless, absolute immunity does not necessarily protect misconduct that took place in the course of, participation in, and supervision of the criminal investigation.  Conduct that occurred after Koubriti was indicted for document fraud, while the government was investigating alleged terrorist activities, conceivably falls into police type investigatory activities.  For example, Plaintiff alleges in Paragraph 27C that Coverntino  "[o]rder[ed] or direct[ed] Defendant Thomas not to memorialize any of the ten to twenty interviews of Yousif Hnimssa[2] prior to the Second Superseding Indictment being

_____

[2]Hnimssa changed his story repeatedly during the course of the investigation--a fact never revealed to Koubriti.  Nor could a paper trail of his vacillating statements be

issued." The instruction by Convertino not to record witness interviews, falls outside the bounds of trial preparation. See McCray v. City of New York, Nos. 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 U.S. Dist. LEXIS 90875, at *59 (S.D. N.Y. Dec. 11, 2007) ("[I]f a prosecutor acts in an investigative capacity, for example; or gives police legal advice on the propriety of investigative techniques and on whether or not probable cause exists to make an arrest ... then absolute immunity cannot be invoked.") (citing Buckley, 509 U.S. at 270-71); Thompson v. Gentz, No. 06-CV-1743, 2007 U.S. Dist. LEXIS 29753, at *4-*5 (E.D. N.Y. Apr. 23, 2007) (vacating prior order granting absolute immunity to prosecutor in part because "prosecutor [was] not entitled to absolute immunity when supervising and interacting with law enforcement agencies in acquiring evidence that might be used in a prosecution") (citing Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987)); Amaker v. Coombe, No. 96 Civ. 1622, 1998 U.S. Dist. LEXIS 14523, at *21 (S.D. N.Y. Sept. 16, 1998) (denying absolute immunity to prosecutor who "provide[d] legal advice to the police" during investigation); see also Mink v. Suthers, 482 F.3d 1244, 1260 (10th Cir. 2007) (holding that "[a]dvising police on interrogation methods or the existence of probable cause does not qualify" prosecutors for absolute immunity) (citation and quotation marks omitted); Genzler v. Longanbach, 410 F.3d 630, 641 (9th Cir. 2005), cert. denied, 2005 U.S. LEXIS 8597 (Nov. 28, 2005) (denying absolute immunity to prosecutors who were "actively directing police-type investigative actions," including witness interviews). Accord McGhee v. Pottawattamie county, 514 F.3d 739 (8th Cir. 2008) (affirming the denial of qualified immunity to a county attorney who "obtain[ed], manufactur[ed], coerc[ed] and fabricat[d]

_____

provided because Convertino instructed the FBI agents not to record statements.

8

evidence before filing formal charges").

In addition, the allegation advanced in ¶ 27 B, that Convertino "[f]ail[ed] to disclose that none of the Defendants could establish which site or sites the sketches established (if either) after their respective trips to Jordan" is one that focuses on Convertino's actions as an investigator--covering his trip to Jordan, and therefore it conceivably falls outside the scope of absolute immunity.

Finally, Convertino maintains that to make a valid claim Plaintiff must show that Convertino suppressed evidence favorable to Plaintiff, either because it was exculpatory or because it was impeaching, which resulted in prejudice to Plaintiff. Because the suppression must have prevented the effective use of the evidence at trial, Convertino concludes that he is entitled to absolute immunity. He argues, "It is [ ] difficult to conceive how Defendant Convertino could have suppressed or withheld evidence in a manner that prevented its "effective use at trial" some 15 months before trial even began." Def.'s Br. at 25. In sum, the passage of time between his trip to Jordan and the alleged suppression of evidence entitles him to absolute immunity.

The Court rejects Convertino's contention that it is only the use of this evidence, not its procurement that violates Koubriti's substantive due process rights. Immunity cannot extend to actions by a prosecutor that violate a person's substantive due process rights by obtaining, manufacturing, coercing or fabricating evidence before filing formal charges, even if the subsequent use of that evidence is protected by absolute immunity. If the Court were to accept this argument, it would render meaningless, the Supreme Court's refusal to extend absolute immunity to prosecutors accused of fabricating expert evidence when the prosecutors were acting in an investigatory fashion rather than as advocate.

9

See Buckley, 509 U.S. at 275.  Moreover, courts have recognized that absolute immunity cannot "relate backwards to protect [a defendant] for any activities he allegedly engaged in" prior to the attachment of immunity.  Gregory v. City of Louisville, 444 F.3d 725, 738 (6th Cir. 2006).  Just as "[s]ubsequent testimony cannot insulate previous fabrication of evidence" for a defendant witness, absolute immunity provided to a prosecutor for conduct in his advocacy role cannot insulate a prosecutor defendant for conduct engaged in prior to conduct relating to trial preparation."  Id. at 739.  Long standing authority in this circuit has recognized that the doctrine of absolute immunity would not protect an official accused of falsifying nontestimonial evidence.  Alioto v. City of Shively,  835 F.2d 1173, 1174, n. 1 (6th Cir. 1987).  Further, the panel in Spurlock found that efforts to persuade a witness to lie were nontestimonial acts, regardless of the connection to the witness' later testimony. 167 F.3d at 1002.

Because he is "the official seeking absolute immunity," Convertino "bears the burden of showing that such immunity is justified for the function in question." Buckley, 509 U.S. at 269. Only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions.  Id. at 273  "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Id. (internal quotation marks and citations omitted); Accord Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000); See also Giuffre v. Bissell, 31 F.3d 1241, 1253 (3d Cir. 1994) (refusing to grant absolute immunity to a prosecutor who advised the police chief regarding forfeiture negotiations).

In sum, the factual development of these allegations are needed in order to assess how best to categorize them. Neither party has directed the Court to a case on all fours factually, and the Court finds dismissal at this procedural juncture is premature.

**B. Is Plaintiff's Fifth Amendment Due Process Claim Cognizable?**

The parties dispute whether Plaintiff states a claim upon which relief can be granted. A Bivens action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights. In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized a cause of action against individual federal officers for violations of the Fourth Amendments protection against unreasonable search and seizures. It reaching this holding, the Court noted that "no special factors counsel[ed] hesitation in the absence of affirmative action by Congress" and there was no "explicit congressional declaration that person injured by a federal officers' violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." Id. at 396, 397.

Although the Supreme Court has rarely recognized nonstatutory damages remedies post Bivens, in Davis v. Passman, 442 U.S. 228 (1979), it allowed a claim for employment discrimination in violation of the Due Process Clause, and in Carlson v. Green, 446 U.S. 14 (1980), it recognized a claim in the context of an Eighth Amendment violation by prison officials. The remedy has been limited to those violations that require a "judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most

11

instances we have found a <u>Bivens</u> remedy unjustified."  <u>Id.</u>

Here, the Court must decide whether a <u>Bivens</u> action is cognizable for a violation of an individual's Fifth Amendment due process rights.  Plaintiff relies on <u>Zahrey v. Coffey</u>, 221 F.3d 342 (2d Cir. 2000), as support for his position that the claim is recognized.  In <u>Zahrey</u>, the plaintiff sued New York police officers and county prosecutors for conspiring to manufacture false evidence against him.  The court found a constitutional due process right against the fabrication of evidence where a deprivation of liberty is alleged.  <u>Id.</u> at 344 (holding that "there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty").

Convertino posits that a <u>Bivens</u> remedy has never been applied to a claim based on a violation of <u>United States v. Brady</u>, 373 U.S. 83 (1963).  In <u>Brady</u>, the Supreme Court established the principle that a prosecutor is required under the Fifth Amendment to disclose exculpatory evidence to the accused in connection with trial proceedings, and the failure to do so when the evidence is material to either guilt or punishment violates due process.  <u>Id.</u> at 87.  The Court does not read the fact that <u>Brady's</u> scope is limited to trial to mean that Koubriti has no constitutional claim at all.  Regardless of how it is categorized, at its heart, Plaintiff's claim is that he was wrongfully convicted without due process of law.   Such a claim has not been rejected out of hand.  <u>See</u> <u>e.g.</u> <u>Brown v. Daniel et al.</u>, Nos. 99-1678, 1679, 1680, 2000 WL 1455443 (4th Cir. September 29, 2000) (addressing a <u>Brady</u> claim brought under <u>Bivens</u>); <u>King v. Fuller</u>, No. 4:08-CV-36, 2008

12

WL 4613076 (E.D. Tenn October 15, 2008) (discussing the previous dismissal of a prisoner plaintiff's <u>Bivens</u> action, in which he alleged among other things that the defendants withheld exculpatory evidence in violation of <u>Brady</u> and impeachment evidence in violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972) because the prisoner's convictions had not been vacated).

The Court therefore declines to declare Plaintiff's claim dead on arrival and instead considers the factors identified by the Supreme Court as relevant in ascertaining the viability of the remedy. First, the court considers whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." <u>Bush</u>, <u>supra</u>, at 378. Absent a convincing reason to refrain, the court considers "any special factors counseling hesitation before authorizing a new kind of federal litigation." <u>Id.</u>

Convertino maintains alternative processes exist to protect Plaintiff's interests and other special factors weigh against recognizing a <u>Bivens</u> remedy. Accordingly, the Court directs its attention to the existence of alternative processes to protect Koubriti's interest.

### 1. Alternative process

Although Convertino raises many options available to Koubriti, the shortcomings with those advanced prevent the Court from embracing his position that a remedy under <u>Bivens</u> is not justified. First, many of the alternatives raised are not relevant under the circumstances presented. Further, these processes are easily distinguished from circumstances that must be measured against a comprehensive remedial scheme devised by Congress, for example in the Social Security Act or the Internal Revenue Code.

13

The first remedies for wrongful conviction identified by Convertino are a Motion for Judgment of Acquittal pursuant to FED. R. CRIM. P. 29(c) and a Motion for New Trial, pursuant to FED. R. CRIM. P. 33. Defendant contends that Plaintiff pursued these avenues of relief and his conviction was overturned. Therefore, Defendant concludes that the Court should refrain from allowing a new remedy.

At the outset, the Court notes that Plaintiff did not really win acquittal. The government merely dismissed one count of the Second Superseding Indictment without prejudice. Nor does the Court find the Federal Rules of Criminal Procedure constitute a sufficient "alternative process." If that were the case, Bivens would have been decided differently because the injured party could have used the criminal procedural rules, which allow a criminal defendant to file a motion to suppress evidence in the event of wrongful search and seizure.

Next, Defendant notes that Plaintiff had the option of filing a Request for Investigation with the Michigan State Bar Association or a complaint with the U.S. Dept. of Justice, Office of Professional Responsibility. See Mich. Ct. R. 9.112; 28 U.S.C. 530B(a), 28 C.F.R. § 77.3, and 28 C.F.R. § 0.39a, Attorney General Order No. 1931-94. Although these options provide an avenue for punishment of Convertino, they do not provide an avenue of relief to Plaintiff.

Defendant also points to Plaintiff's option of filing a motion for reimbursement of attorney fees through § 617 of the Hyde Amendment, Pub.L. No. 105-199, § 617, 111 Stat. 2519 (18 U.S.C. § 3006A). Because recovery of attorney fees is such a minimal part of the damages resulting from the criminal prosecution that occurred here, the Court

finds it does not constitute an alternative process mandating restraint.

Likewise, the Court rejects Convertino's argument that damages resulting from an unjust conviction and imprisonment could be remedied through a statutory malicious prosecution action or a state claim for a violation of the Michigan Constitution. This argument ignores the fact that Convertino has immunity for his actions as a prosecutor, and consequently, these options provide no avenue of relief to Plaintiff.

Lastly, Defendant relies on 28 U.S.C. § 2513(e), which provides an action for unjust conviction and imprisonment. Under the statute, a person suffering from an unjust conviction and imprisonment for a noncapital offense may recover up to $50,000 for each 12-month period of unjust incarceration. The person suing must have had his conviction reversed or set aside on the ground that he is not guilty of the offense or on a new trial where he was found not guilty. That is not what happened to Koubriti, and it does not appear that this statute applies.

In sum, the Court finds that those considerations requiring restraint are not present. Consequently, it considers, the second factor.

### 2. Other factors counseling hesitation

Defendant maintains that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties. . .and shade his decisions instead of exercising the independence of judgment required by his public trust." Def.'s Br. at 13 (quoting Imbler v. Pachtman, 424 U.S. 409, 423 (1976). This argument only holds weight relative to actions Convertino took as a prosecutor. That conduct that remains at issue is the conduct he is alleged to have engaged in as an "investigator."

15

Defendant also argues that hesitation is required because Congress has articulated that compensation should be available only to those persons who are not guilty of the offence for which they were convicted or pardoned due to actual innocence. 28 U.S.C. § 2513(a)(1). Consequently, if the Court were to allow a judicially-created remedy to proceed, it would violate the separation of powers doctrine, which mandates deference to legislative policy choices. Defendant's argument is not persuasive, given the legislative history of § 2513(a)(1). It suggests that this provision arose out of DNA exonerations, not the type of circumstances presented here.

Finally, Convertino concludes that Koubriti's situation is analogous to the plaintiff's in Wilkie v. Robbins, 551 U.S. __, 127 S. Ct. 2588, 2597 (2007). In Wilkie, the Court granted the defendants summary judgment on the plaintiff's Bivens claim. The Court concluded that "hard-bargaining" by the federal agents committing trespass, which included revoking permits and filing numerous administrative and criminal charges, was insufficient to establish Bivens liability. Id., 127 S. Ct. at 2600-05. Convertino notes the egregious nature of the conduct employed by the federal defendants was not dispositive. Specifically, after government officials discovered that a nonexclusive easement granted by a prior landowner to the government had not been recorded, they asked the current landowner for an easement. When he refused, the officials instituted and executed a plan of harassment that included trespassing, canceling a negotiated right-of-way, terminating the plaintiff's special use permit, revoking the plaintiff's grazing permit, bringing administrative and criminal charges against the plaintiff, requesting other agency officials to impound the landowner's cattle, and videotaping the landowner's ranch guests to

16

"catch" the landowner trespassing.  Id. at 2594-2596.

Even as the Supreme Court recognized that various processes existed to "vindicat[e] virtually all of [the landowner's] complaints," it recognized that the "patchwork" of state and federal administrative and judicial proceedings applying statutes, regulations, and common law rules did not adequately remedy the whole of the officials' six-year course of conduct.  Id. at 2600-01.  Nevertheless, the Court found that imposing limits on government agents when engaging in necessary and legitimate "hard-bargaining" for a legitimate interest weighed against creating a Bivens remedy.  Id. at 2601-02.

Koubriti's situation is distinguishable.  Here, the government actor was not pursuing a legitimate interest.  Further, the Court does not view the pursuit of a remedy for a violation of a property interest as analogous to the pursuit of a remedy for a violation of a liberty interest.  Despite the limitations imposed on suits brought pursuant to Bivens, the Court finds at this stage of the proceedings, Plaintiff remains a candidate for Bivens relief.  His Fifth Amendment claim against a federal officer is more closely aligned with the facts of Bivens.  The Bivens doctrine has been extended to violations of the Fifth Amendment.  See Davis v. Passman, 442 U.S. 228 (1979) (holding that the equal protection component of the Fifth Amendment's due process clause impliedly authorized recovery of damages from a Congressman for sex discrimination in employment); Bishop v. Trice, 622 F.2d 349 (8th Cir. 1980) (reinstating a complaint alleging federal employees deprived the plaintiff of liberty without due process of law); Hill v. McMartin, 432 F. Supp. 99 (E.D.  Mich. 1977) (Feikens, J.) (allowing a Bivens claim for deprivation of Fifth Amendment rights).

In sum, courts have allowed a <u>Bivens</u> action based on a violation of the due process clause of the Fifth Amendment. Regardless of whether Plaintiff can ultimately prevail, dismissing his law suit is not appropriate. Even if Plaintiff's legal theory is characterized as novel, the merits are best addressed after factual development.

## V. CONCLUSION

In light of the foregoing, Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: December 3, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.


s/Bernadette M. Thebolt
Deputy Clerk